# Illinois Official Reports

## Appellate Court

---

### *People v. Dodds*, 2014 IL App (1st) 122268

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. PAUL DODDS, Defendant-Appellant. |
| | |
| District & No. | First District, Fourth Division<br>Docket No. 1-12-2268 |
| | |
| Filed | February 27, 2014 |
| | |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Defendant's guilty plea to one count of possession of child pornography and sentence to 18 months' probation were vacated and the cause was remanded for further proceedings based on the ineffective assistance of his counsel, who incorrectly advised defendant that he would only have to register as a sex offender for 10 years, since defendant established that he would have gone to trial if he had been properly advised and he alleged in his petition under section 2-1401 of the Code of Civil Procedure that he would have raised the affirmative defense that he did not know the victim was under the age of 18; therefore, his plea was involuntary. |
| | |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 01-CR-02556; the Hon. Carol A. Kipperman, Judge, presiding. |
| | |
| Judgment | Judgment vacated; reversed and remanded with instructions. |

| Counsel on Appeal | Damon M. Cheronis and Ian M. Barney, both of Law Office of Damon M. Cheronis, of Chicago, for appellant. |
|---|---|
| | Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Matthew Connors, and Anthony M. O'Brien, Assistant State's Attorneys, of counsel), for the People. |
| Panel | JUSTICE FITZGERALD SMITH delivered the judgment of the court, with opinion. Justices Lavin and Epstein concurred in the judgment and opinion. |

**OPINION**

¶ 1    This is an appeal from the circuit court's order dismissing a petition to vacate judgment filed by the defendant, Paul Dodds, pursuant to section 2-1401 of the Illinois Code of Civil Procedure (Code) (735 ILCS 5/2-1401 (West 2000)). The defendant, who was charged with four counts of possession of child pornography (720 ILCS 5/11-20.1(a)(1) (West 2000)), pleaded guilty to one count in exchange for a sentence of 18 months' probation and the requirement that he register as a sex offender for a period of 10 years. Apparently, at the time of sentencing, defense counsel, the State and the trial judge all mistakenly believed that the defendant was required to register only for 10 years, rather than natural life, as required by Illinois Sex Offender Registration Act (SORA) (730 ILCS 150/7 (West 2000)).[1] After the 10 years expired, the defendant was informed that he would have to register as a sex offender for natural life. The defendant then filed a section 2-1401 petition (735 ILCS 5/2-1401 (West 2000)) seeking to vacate his conviction and sentence. The defendant argued that: (1) his sentence was void because the trial court lacked the authority to impose a sentence not permitted by law; and (2) his guilty plea was involuntary because: (a) his counsel was ineffective and (b) the State breached its promise that the defendant be required to register only for 10 years, rather than natural life, thereby depriving the defendant of due process of law. The State filed and the circuit court granted a motion to dismiss the defendant's petition pursuant to sections 2-615 and 2-619 of the Code (735 ILCS 5/2-615, 2-619 (West 2000)). The defendant now appeals that dismissal and asks this court to vacate his conviction and sentence. For the reasons that follow, we agree with the defendant, vacate his conviction and sentence and remand to the trial court with instructions.

---

[1]Under the SORA, anyone convicted of possession of child pornography is qualified as a "sexual predator" (730 ILCS 150/2(E)(1) (West 2000)), and must register for natural life (730 ILCS 150/7 (West 2000)).

- 2 -

## I. BACKGROUND

The record before us is sparse and incomplete, revealing only the following facts and procedural history.[2] In January 2001, the defendant was arrested and charged with four counts of possession of child pornography under section 11-20.1(a)(1) of the Criminal Code of 1961 (Criminal Code) (720 ILCS 5/11-20.1(a)(1) (West 2000)).[3]

On June 19, 2001, the defendant filed a motion to suppress evidence, arguing that the seizure of his business and residence computers was illegal because it was made under duress. The defendant alleged that on January 2, 2001, at approximately 4 p.m., he received a telephone call from the Westchester police department, informing him that there had been a break-in at his business–Vector Marketing, in Westmont. When the defendant arrived at the scene, he was met with five or six police officers who told him that there had been no break-in and that instead they were there to speak to him about an Internet AOL account registered to his business and allegations made that he was involved in child pornography. According to the defendant's motion to suppress, the officers had no search warrant and no exigent circumstances existed that would have justified their search of the premises without one. Instead, according to the motion to suppress, the officers coerced the defendant into signing a consent form to search. The defendant alleged that the officers threatened to tell his fiancée and his employees on the premises about the child pornography accusations if he did not sign the consent form. They told the defendant that if he wanted to "keep this private" he would sign the consent form. They also refused to permit the defendant to telephone his fiancée unless he signed the form. According to the motion to suppress, the defendant signed the form under duress. The motion, therefore, sought the suppression of all evidence obtained

[2]We note that we are without the common law record from the original proceedings before the circuit court, wherein the defendant pleaded guilty to one count of child pornography. Despite our requests to both parties to provide us with this record (in particular, all written documents leading to the defendant's underlying arrest, any inculpatory statements the defendant may have made to police, and any documents related to the Rule 402 (Ill. S. Ct. R. 402 (eff. July 1, 1997)) plea conference, and their attempts to oblige, due to the 10-year time lapse between those original proceedings and the cause before us, neither the State nor the defendant has been able to locate the record. We therefore proceed based solely upon the record that is before us and those facts that are undisputed by that limited record.

[3]Specifically, the defendant was charged with committing the offense of child pornography in that he filmed, videotaped, photographed or otherwise depicted or portrayed by means of any similar visual medium or reproduction a child, John Doe, whom he knew or reasonably should have known to be under the age of 18: (1) actually or by simulation engaged in any act of sexual intercourse with another person (720 ILCS 5/11-20.1(a)(1)(i) (West 2000)); (2) actually or by simulation engaged in any act of sexual conduct involving the sex organs of the child and the mouth, anus or sex organs of another person (720 ILCS 5/11-20.1(a)(1)(ii) (West 2000)); and (3) depicted or portrayed in any pose, posture or setting involving a lewd exhibition of the unclothed genitals, pubic area, buttocks or partially developed breast.

as a result of that consent form, namely, the defendant's business and residence computers, as well as any other information obtained as a result of that evidence.[4]

¶ 5    The record before us further reveals that on July 20, 2001, the defendant appeared in court with his counsel, withdrew his motion to suppress and instead entered a negotiated guilty plea. The transcript of the plea hearing, which is before this court as an exhibit to another pleading, reveals that the State and the defendant agreed that the defendant would plead guilty to one count of child pornography in violation of section 11-20.1(a)(1)(i) of the Criminal Code (720 ILCS 5/11-20.1(a)(1)(i) (West 2000))[5] in exchange for a sentence of 18 months' probation. The transcript of the plea hearing, however, does not disclose the specifics of the factual basis for the defendant's guilty plea. Rather, in that regard, the transcript reveals only the following colloquy between the assistant State's Attorney (ASA) and defense counsel:

> "MR. KRUEGER [ASA]: Judge, I spoke to counsel, and he agreed that if the State were to produce evidence, that being witnesses, police officers, state's attorneys, and physical evidence in the case, the State would prove this case beyond a reasonable doubt; and it's in the court's jurisdiction to sentence the defendant.
>
> MR. PIES [Defense counsel]: And I have so stipulated to that, Judge."

¶ 6    The transcript further establishes that after the plea was entered, the court asked the prosecutor whether as a result of the crime he was pleading guilty to the defendant would be required to register as a sex offender. In response, the ASA stated that the defendant was obligated to register as a sex offender, and that he had to sign the Illinois Sex Offender Registration Act Notification Form (hereinafter, the SORA notification form), in order to acknowledge his duty to register. In response, defense counsel indicated that he had already "gone through this with his client" and that he had explained the SORA notification form to him. According to defense counsel, the defendant had "fully read and understood it." The SORA notification form is part of the record before us and contains the signatures of both the defendant and the ASA. That form explicitly states that the defendant must register as a sex offender only for "10 years from conviction or release date." The form nowhere speaks about mandatory registration for life.

---

[4]In that respect we note that in its brief, the State references a handwritten confession by the defendant. The record before us, however, does not contain either that confession or any evidence that would establish that such a confession was made in the underlying proceedings. On appeal, the defendant nowhere acknowledges that he made, handwrote or signed a confession. As noted above, we continue to be without the common law record of the initial proceedings, despite requests to both of the parties to provide us with such. For the reasons already articulated above, we will proceed based only on those facts that are undisputed and that are before us in the record.

[5]That count specifically alleged that the defendant had committed the offense of child pornography in that he filmed, videotaped, photographed or otherwise depicted or portrayed by means of any similar visual medium or reproduction a child, John Doe, whom he knew or reasonably should have known to be under the age of 18, actually or by simulation engaged in any act of sexual intercourse with another person.

- 4 -

¶ 7        The record further reveals that shortly after the plea hearing, the defendant was informed by his probation officer that he would have to register as a sex offender for life, instead of for 10 years. As a result, on August 20, 2001, the defendant, through his plea counsel, filed a motion for clarification of his sentence. In that motion, the defendant asserted that both pursuant to the SORA (730 ILCS 150/7 (West 2000)) and the SORA notification form, which he and the ASA had signed, the defendant was required to register as a sex offender only for a period of 10 years. In support of the motion, the defendant attached a copy of the statute and the notification form. The State did not oppose this motion, and on August 31, 2001, the parties appeared before the same trial judge that had presided over the defendant's plea. The following relevant colloquy then occurred:

"MR. PIES [Defense counsel]: Here's a copy for you, your Honor, of the Illinois Sex Offender Registration Act, which, in the middle 'duties to register,' [states] you are subject to register for 10 years from the date. And that is the agreement between the State and my client.

THE COURT: Well, that's what he's required to do. Not for life. You're saying that probation is saying he has to register for life? He doesn't. It's 10 years.

MR. PIES: Right.

THE COURT: That's fine. So, that takes care of that.

MR. PIES: Your Honor, I do not know that she's going to put in her reports, or this or that. So, if the Court is definitively stating yes, he reports for 10 years as opposed [to] for life, I don't want her marking down in her reports that he has to report for life and have it transferred to Du Page, or have them say he has to report for life and then years down the road we come back and God knows this case is so old we can't find it.

THE COURT: He has to report as filed by law. The law is a 10 year period. That's it.

MR. PIES: There's no dispute on that, your Honor. The only reason for this is to clarify the contradictory information given by the probation officer.

THE COURT: What does probation have to say? Do you know why they told him he has to report for life?

MR. CATALANO [probation officer]: No, your Honor. Did you report here?

MR. KRUEGER [ASA]: His probation is going to be transferred in 30 days to Du Page.

MR. CATALANO: The defendant's probation officer would be Kathy George, your Honor. I don't believe that she's here today. I'm not sure. I just got here myself about 15 minutes ago.

THE COURT: He [the defendant] has to do what he's required to do under the law. That's it.

MR. CATALANO: Do you want to hold it on call and we can have the [probation] officer here one day next week?

THE COURT: It isn't necessary.

MR. PIES: That's the whole point. This is unnecessary. I just wanted it on the record that per the State, per you, per our agreement he reports for 10 years. That's all. I just wanted it somewhere on the record.

THE COURT: That's by operation of law. The probation order itself doesn't even say that. It doesn't have to. He was found guilty of child pornography. He has to do that by operation of law. And whatever the law says is what he has to do. Probation can't modify it.

MR. PIES: I know that, your Honor.

THE COURT: Well, I just put in on the record. That should be sufficient. Okay."

¶ 8   Ten years after this hearing, in July 2011, the defendant was once again informed by the probation department that his registration obligations had not expired and that he would have to register as a sex offender for life. As a result, on January 12, 2012, with the aid of a new counsel, the defendant filed a petition to vacate his plea, conviction and sentence pursuant to section 2-1401 of the Code (735 ILCS 5/2-1401 (West 2000)). In that petition, the defendant acknowledged that pursuant to the SORA (730 ILCS 150/7 (West 2000)) he, in fact, had to register as a sex offender for life, because, as unbeknownst to him, his defense counsel, the prosecutor and the trial judge, at the time of his sentencing, a conviction for possession of child pornography qualified him as a "sexual predator" (730 ILCS 150/2(E)(1) (West 2000)), automatically triggering mandatory lifetime registration (730 ILCS 150/7 (West 2000)).

¶ 9   In his petition, the defendant, nevertheless, asserted that his conviction and sentence should be vacated because: (1) his sentence was void since the trial judge lacked the inherent power to make or enter a sentence that was not authorized by statute; and (2) his plea was involuntary because: (a) he was denied his constitutional right to effective representation when defense counsel misadvised him that if he pleaded guilty he would be required to register as a sex offender for only 10 years; and (b) he was denied the benefit of the plea bargain since his guilty plea was induced by false representations of defense counsel, the State's Attorney's office and the trial court.

¶ 10   On April 6, 2012, the State filed a motion to dismiss the defendant's section 2-1401 petition, arguing that: (1) the defendant failed to comply with the pleading requirements of section 2-1401 (735 ILCS 5/2-1401 (West 2000)) by not attaching a supporting affidavit to his petition; (2) the petition was untimely because the judgment was not void and the petition was filed beyond the two-year limitations period articulated in section 2-1401 (735 ILCS 5/2-1401 (West 2000)); (3) the defendant's claim that counsel was constitutionally ineffective and his plea was involuntary were not cognizable under section 2-1401 (735 ILCS 5/2-1401 (West 2000)); and (4) the petition was statutorily insufficient because the defendant failed to allege a meritorious defense.

¶ 11   On June 1, 2012, the defendant filed a response to the State's motion to dismiss, explaining that he had exercised due diligence in bringing forth his claims and that he had failed to file his section 2-1401 petition within the statutory two-year limitations period (735 ILCS 5/2-1401 (West 2000)) only because the grounds for relief were fraudulently concealed from him by the actions of both the ASA and the trial judge, who continued to misrepresent the law to him with respect to his SORA registration requirement. The defendant further argued that under these particular circumstances, where he had no standing to file a

postconviction petition pursuant to the Illinois Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2000)), since the terms of his probation had already been satisfied, he should be permitted to bring a claim of ineffective assistance of counsel under a section 2-1401 petition (735 ILCS 5/2-1401 (West 2000)). In addition, the defendant maintained that had he proceeded to trial rather than a plea hearing, he would have had a meritorious defense, namely, that he did not know that the victim was under 18 years of age, so that the State could not have proven that he had the requisite intent for the underlying offense of child pornography, and therefore could not have proven him guilty beyond a reasonable doubt.

¶ 12    In support of his reply, the defendant supplemented his original petition with two affidavits. The first was an affidavit from his newly retained counsel detailing how the defendant promptly retained his services in July 2011, immediately after he had learned that under the SORA (730 ILCS 150/7 (West 2000)) he would have to register for natural life. The second was the defendant's own affidavit recounting the wrong advice he had received from his plea counsel on the length of his SORA registration duty and his efforts to clarify the duration of that duty. In his affidavit, the defendant also specifically asserted that he would not have pleaded guilty had he known that he would be obligated to register as a sex offender for life. Rather, the defendant asserted, had counsel informed him of the SORA's lifetime registration requirement, he would have chosen to go to trial.

¶ 13    On July 20, 2012, the trial court heard arguments on the State's motion to dismiss the defendant's section 2-1401 petition (735 ILCS 5/2-1401 (West 2000)). The same trial judge that had presided over the defendant's plea hearing and motion to clarify the sentence presided over the hearing on the State's motion to dismiss. After hearing arguments by both parties, the trial judge dismissed the defendant's section 2-1401 petition. In doing so, the court ruled only on two specific issues. The trial judge first found that the judgment entered against the defendant was not void because sex offender registration was only a collateral consequence of the conviction and not part of the defendant's sentence. The trial court then rejected the defendant's ineffective assistance of counsel claim, holding that the defendant had failed in his burden to establish that he was prejudiced by counsel's conduct. In addressing the merits of the ineffective assistance of counsel claim, the trial court implicitly found that the defendant had sufficiently explained why he filed his section 2-1401 petition (735 ILCS 5/2-1401 (West 2000)) outside of the statutory two-year limitations period (*i.e.*, that the grounds for relief were fraudulently concealed from him by the actions of the State and the trial court, both of which persisted in misrepresenting to him that under the negotiated plea agreement he was required to register as a sex offender for only 10 years). The defendant now appeals.

¶ 14                                    II. ANALYSIS

¶ 15    On appeal the defendant makes three contentions. He first argues that his conviction and sentence should be vacated as void, since the trial court lacked the authority to impose a sentence (*i.e.*, the registration requirement) that was not permitted by statute (see 730 ILCS 150/7 (West 2000)). In this respect, the defendant concedes that under prevailing Illinois and federal precedent, sex offender registration constitutes a collateral consequence of conviction so as to render the judgment merely voidable, rather than void. The defendant, nevertheless,

asserts that in this particular situation, the court made the 10-year SORA registration requirement a part of the actual sentence when it ruled on the defendant's motion to clarify the sentence that under the SORA the defendant was required to register as a sex offender for only 10 years.

¶ 16       Second, on appeal the defendant asserts that his plea counsel's affirmative misadvice as to his sex offender registration duty amounted to ineffective assistance of counsel and rendered his guilty plea involuntary and unknowing. In addition, the defendant contends that he was denied the benefit of his plea agreement because his guilty plea was based upon misrepresentations of both the ASA and the trial court. According to the defendant both the State and the trial court persisted in improperly validating his counsel's misadvice, thereby depriving him of due process of law. We address each of the defendant's contentions in turn.

¶ 17       We begin by setting forth the well-established principles regarding section 2-1401 petitions. Section 2-1401 of the Code (735 ILCS 5/2-1401 (West 2008)) provides a comprehensive statutory procedure by which final orders, judgments, and decrees may be vacated after 30 days from their entry. *In re Dar. C.*, 2011 IL 111083, ¶ 104; *People v. Vincent*, 226 Ill. 2d 1, 7 (2007); *People v. Haynes*, 192 Ill. 2d 437, 460 (2000); see also *Mills v. McDuffa*, 393 Ill. App. 3d 940, 945 (2009). Although a section 2-1401 petition is usually characterized as a civil remedy, its remedial powers extend to criminal cases. *Vincent*, 226 Ill. 2d at 8 (citing *People v. Sanchez*, 131 Ill. 2d 417, 420 (1989)).

¶ 18       "In considering a section 2-1401 petition, the court must determine whether facts exist that were unknown to the court at the time of trial and would have prevented judgment against the defendant." *People v. Welch*, 392 Ill. App. 3d 948, 952 (2009). To be entitled to relief under section 2-1401, a defendant must set forth specific factual allegations supporting each of the following elements: (1) the existence of a meritorious defense or claim; (2) due diligence in presenting this defense or claim to the circuit court in the original action; and (3) due diligence in filing the section 2-1401 petition for relief. *People v. Pinkonsly*, 207 Ill. 2d 555, 566 (2003); see also *Vincent*, 226 Ill. 2d at 7-8 ("Relief under section 2-1401 is predicated upon proof, by a preponderance of evidence, of a defense or claim that would have precluded entry of the judgment in the original action and diligence in both discovering the defense or claim and presenting the petition."). *People v. Mahaffey*, 194 Ill. 2d 154, 181 (2000) ("A section 2-1401 petition for relief from a final judgment is the forum in a criminal case in which to correct all errors of fact occurring in the prosecution of a cause, unknown to petitioner and the court at the time judgment was entered, which, if then known, would have prevented its rendition."). The petition must be supported by affidavit or other appropriate showing as to matters not of record. *Vincent*, 226 Ill. 2d at 6; 735 ILCS 5/2-1401(b) (West 2008).

¶ 19       In addition, a section 2-1401 petition must be filed within two years after entry of the judgment being challenged. 735 ILCS 5/2-1401(c) (West 2008); see also *Vincent*, 226 Ill. 2d at 7; *People v. Pinkonsly*, 207 Ill. 2d 555, 566 (2003). The two-year limitations period, however, does not apply to petitions brought on voidness grounds. *Sarkissian v. Chicago Board of Education*, 201 Ill. 2d 95, 104 (2002). Similarly, the two-year filing period will be excused where a clear showing has been made that the person seeking relief is: (1) under legal disability or duress or (2) the grounds for relief are fraudulently concealed. *Pinkonsly*, 207 Ill. 2d at 566; see also *Mahaffey*, 194 Ill. 2d at 181-82 ("It is well established that the

two-year limitation period mandated by section 2-1401 must be adhered to in the absence of a clear showing that the person seeking relief is under legal disability or duress or the grounds for relief are fraudulently concealed."). To make a successful showing of fraudulent concealment, the defendant must specifically allege facts demonstrating that his opponent affirmatively attempted to prevent the discovery of the purported grounds for relief, as well as offer factual allegations demonstrating his good faith and reasonable diligence in trying to uncover such matters before trial or within the limitations period. See *People v. Coleman*, 206 Ill. 2d 261, 290 (2002). Where, as here, a section 2-1401 petition is dismissed with prejudice on the pleadings, the standard of review is *de novo*. *Vincent*, 226 Ill. 2d at 18.

¶ 20    We begin by addressing the defendant's ineffective assistance of counsel claim. The defendant asserts that his plea was not knowing or voluntary because his counsel misadvised him that the offense to which he was pleading guilty would require him only to register as a sex offender for 10 years.

¶ 21    Although before the circuit court the State originally challenged the defendant's ability to raise his ineffective assistance of counsel claim outside of the two-year statutory limitations period articulated in section 2-1401 (735 ILCS 5/2-1401 (West 2000)), on appeal, it drops this argument, apparently conceding that the defendant sufficiently pleaded that he failed to raise the claim within the requisite time period because the State's Attorney's office and the trial court fraudulently concealed the claim from him by repeatedly advising him that he would only have to register as a sex offender for 10 years. On appeal, the State also does not argue, although it did before the circuit court, that the defendant may not raise a constitutional claim of ineffective assistance of counsel within the framework of a section 2-1401 petition (735 ILCS 5/2-1401 (West 2000)) since such claims are not based on errors of fact but, rather, errors of law. For purposes of appeal, the State apparently concedes that under the particular circumstances of this case, the defendant may raise his claim by way of a section 2-1401 petition since he has already served his full probation and therefore has no other avenue for addressing his grievances. See *People v. Lawton*, 212 Ill. 2d 285, 287 (2004) (recognizing that the statutory language of section 2-1401 does not expressly limit its application to errors of fact, and holding that a section 2-1401 petition is a viable mechanism for bringing ineffective assistance of counsel claims where relief under the Post-Conviction Hearing Act is unavailable).

¶ 22    Instead, on appeal, the State argues against the merits of the defendant's ineffective assistance of counsel claim. The State contends the defendant has failed in his burden to establish that counsel's misadvice as to the 10-year registration requirement prejudiced him so as to render his plea involuntary. For the reasons that follow, we disagree with the State.

¶ 23    It is well established that claims of ineffective assistance of counsel are resolved under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). See *People v. Lacy*, 407 Ill. App. 3d 442, 456 (2011); see also *People v. Colon*, 225 Ill. 2d 125, 135 (2007) (citing *People v. Albanese*, 104 Ill. 2d 504 (1984) (adopting *Strickland*)). Under the two-prong test set forth in *Strickland*, a defendant must establish both: (1) that his attorney's actions fell below an objective standard of reasonableness; and (2) that the defendant was prejudiced by counsel's conduct. See *Lacy*, 407 Ill. App. 3d at 456; see also *People v. Ward*, 371 Ill. App. 3d 382, 434 (2007) (citing *Strickland*, 466 U.S. at 687-94).

¶ 24    Under the first prong of *Strickland*, the defendant must prove that his counsel's performance was deficient because it fell below an objective standard of reasonableness " 'under prevailing professional norms.' " *Lacy*, 407 Ill. App. 3d at 456-57 (quoting *Colon*, 225 Ill. 2d at 135); see also *People v. Evans*, 209 Ill. 2d 194, 220 (2004). Under the second prong, the defendant must show that "but for" counsel's deficient performance, there is a reasonable probability that the result of the proceeding would have been different. *Lacy*, 407 Ill. App. 3d at 457; see also *Colon*, 225 Ill. 2d at 135; *Evans*, 209 Ill. 2d at 220. "[A] reasonable probability that the result would have been different is a probability sufficient to undermine confidence in the outcome–or put another way, that counsel's deficient performance rendered the result of [the proceedings] unreliable or fundamentally unfair." *Evans*, 209 Ill. 2d at 220.

¶ 25    In the present case, the defendant argues, and the State concedes, that plea counsel's misrepresentation to the defendant that under the SORA (730 ILCS 150/7 (West 2000)) he would be obligated to register as a sex offender for only 10 years, constitutes deficient performance. We agree with both parties and hold that under *People v. Presley*, 2012 IL App (2d) 100617, and *People v. Hughes*, 2012 IL 112817, and because of the breadth of the SORA (730 ILCS 150/7 (West 2000)) and the onerous nature of sex offender registration, counsel's performance is deficient whenever he or she fails to advise a defendant of the appropriate SORA registration requirements in the context of a plea agreement.

¶ 26    In that respect, we begin by noting that in *Presley*, 2012 IL App (2d) 100617, the Second District was faced with the same issue we are asked to address here, and strongly suggested that plea counsel performs deficiently whenever he or she affirmatively misleads a client as to the lifetime SORA registration requirements. *Presley*, 2012 IL App (2d) 100617, ¶ 29. In that case, the defendant was charged with two counts of aggravated criminal sexual abuse. *Presley*, 2012 IL App (2d) 100617, ¶ 3. The defendant pleaded guilty to one count of aggravated sexual abuse. *Presley*, 2012 IL App (2d) 100617, ¶ 4. During the plea hearing the defendant was not apprised that by pleading guilty to the aforementioned crime he would be subject to lifetime registration as a sex offender under the SORA (730 ILCS 150/1 *et seq*. (West 2006)). *Presley*, 2012 IL App (2d) 100617, ¶ 4. The defendant subsequently obtained new counsel and filed a motion to withdraw his guilty plea, arguing that his plea counsel was ineffective for failing to advise him of the sex offender registration requirements. *Presley*, 2012 IL App (2d) 100617, ¶ 11. In support of his motion, the defendant argued that the United States Supreme Court decision in *Padilla v. Kentucky*, 559 U.S. 356 (2010), which held that a defense counsel must inform a client whether the plea carries a risk of deportation, had changed the law regarding whether attorneys were obligated to advise their clients about collateral consequences of a sentence. *Presley*, 2012 IL App (2d) 100617, ¶ 11. The defendant in *Presley* contended that analogous to *Padilla*, his counsel was obligated to advise him about the collateral consequence of sex offender registration, and that his failure to do so rendered him ineffective. *Presley*, 2012 IL App (2d) 100617, ¶ 11. After the circuit court denied the defendant's motion, he appealed. *Presley*, 2012 IL App (2d) 100617, ¶¶ 19-20.

¶ 27    On appeal, in *Presley*, the Second District held that where a defendant is affirmatively misled by his counsel with respect to the collateral consequences of his sentence, such as sex offender registration, counsel is deficient for purposes of a *Strickland* analysis. *Presley*, 2012 IL App (2d) 100617, ¶ 29. The court declined to determine, however, whether counsel's

failure to inform the defendant of such collateral consequence also constituted deficient performance, but strongly suggested that under the United State's Supreme Court decision in *Padilla*, it would. *Presley*, 2012 IL App (2d) 100617, ¶¶ 31-34.

¶ 28    In coming to this conclusion, the court in *Presley* first noted that prior to *Padilla* our courts consistently held that for a plea to be deemed voluntary and intelligent, the defendant had to be "fully aware of the direct consequences of entering the plea," but not also the collateral consequences. (Internal quotation marks omitted.) *Presley*, 2012 IL App (2d) 100617, ¶ 27. The court explained:

> "Direct consequences of a plea are those consequences affecting the defendant's sentence and other punishment that the trial court may impose. [Citation.] On the other hand, a defendant's knowledge–or lack thereof–of the collateral consequences of a plea has no bearing on the validity of the plea. [Citation.] Collateral consequences are effects upon the defendant that the trial court has no authority to impose; they result from an action that might or might not be taken by an agency that the trial court does not control. [Citation.]" *Presley*, 2012 IL App (2d) 100617, ¶ 27.

Accordingly, in *Presley*, the Second District explained that prior to *Padilla*, in measuring the reasonableness of an attorney's performance under *Strickland*, Illinois courts emphasized the distinction between advising defendants of the direct consequence of a guilty plea and advising them of consequences that arise collaterally form the plea. *Presley*, 2012 IL App (2d) 100617, ¶ 28. Under these principles, lifetime registration for sex offenders under the SORA (730 ILCS 150/7 (West 2000)) was not considered a constraint on liberty, but merely a collateral consequence of a defendant's conviction, and did not provide a basis for invalidating a plea based on counsel's failure to advise regarding registration. *Presley*, 2012 IL App (2d) 100617, ¶ 28.

¶ 29    However, in *Presley* the Second District noted that even prior to *Padilla*, our courts drew a distinction between an attorney's failure to advise regarding collateral consequences and an attorney's affirmative misadvice about such consequences. *Presley*, 2012 IL App (2d) 100617, ¶ 29 (citing *People v. Correa*, 108 Ill. 2d 541, 553 (1985) (holding that an attorney's erroneous and misleading advice to the defendant on the collateral consequences of deportation invalidated the defendant's guilty plea), and *People v. Young*, 355 Ill. App. 3d 317, 323 (2005) (noting the distinction between the passive conduct of counsel in failing to discuss with a defendant the collateral consequences of a guilty plea and unequivocal, erroneous, misleading representations that counsel makes in response to the defendant's specific inquiries)). The court in *Presley*, however, held that in that case, the defendant had failed to establish that counsel had explicitly misadvised him regarding his SORA obligations. *Presley*, 2012 IL App (2d) 100617, ¶ 30.

¶ 30    The *Presley* court next explained that *Padilla* recently changed the rules with respect to counsel's duty to advise of collateral consequences. As *Presley* explained:

> "[T]he Supreme Court recently held in *Padilla* that counsel must inform his or her client whether a plea carries a risk of deportation. [Citation.] Noting that deportation was often considered by lower courts to be a collateral consequence, the Court declined to apply a distinction between direct and collateral consequences in light of the unique nature of deportation. [Citation.] Equally important, the Court refused to

find that *Strickland* applied only to affirmative misadvise about whether the defendant's conviction would result in deportation. [Citation.] According to the Court, there was no relevant difference between an act of commission and an act of omission in this context. [Citation.]" *Presley*, 2012 IL App (2d) 100617, ¶ 31.

¶ 31    Although the Second District in *Presley* declined to decide that *Padilla* applied to all collateral consequences, including sex offender registration, it held that if *Padilla* did apply to SORA requirements, counsel would have been deficient regardless of whether he affirmatively mislead the defendant or failed to inform him of his SORA obligations. *Presley*, 2012 IL App (2d) 100617, ¶¶ 31-34.

¶ 32    Subsequent to *Presley*, our supreme court decided *Hughes*, 2012 IL 112817, affirmatively adopting the rationale in *Padilla* and applying it to a counsel's duty to advise a defendant of the possibility of involuntary commitment pursuant to the Illinois Sexually Violent Persons Commitment Act (SVPCA) (725 ILCS 207/9 (West 2008)). In *Hughes*, a defendant who pleaded guilty to aggravated criminal sexual abuse filed a motion to vacate his plea after he was released from prison and the State filed a petition to have him declared a sexually violent person under the SVPCA. *Hughes*, 2012 IL 112817, ¶¶ 9-10. When the motion to vacate his plea was denied, the defendant appealed, arguing, *inter alia*, that under the United States Supreme Court decision in *Padilla*, his plea was not knowingly and voluntarily entered since his counsel never advised him that the plea could be used as a basis for filing a petition to have him declared a sexually violent person, subject to involuntary commitment. *Hughes*, 2012 IL 112817, ¶¶ 15-16. The appellate court affirmed, finding that traditionally the filing of a sexually violent person petition was a collateral consequence of the plea and that, therefore, the defendant had failed to establish that under *Padilla* counsel had a duty to advise him regarding the possibility of involuntary commitment. *Hughes*, 2012 IL 112817, ¶ 16.

¶ 33    Our supreme court disagreed and held that under *Padilla*, a counsel's failure to advise the defendant of the collateral consequence, *i.e.*, the possibility that his plea would be used as a basis for the filing of a sexually violent person petition, rose to the level of ineffective performance of counsel. *Hughes*, 2012 IL 112817, ¶¶ 43-62.[6]

¶ 34    In coming to this conclusion, our supreme court first noted that prior to *Padilla*, most federal and state courts, including Illinois, held that the failure to advise a client of potential collateral consequences fell outside the gambit of the sixth amendment. *Hughes*, 2012 IL 112817, ¶ 45.

¶ 35    The court nevertheless recognized that courts across the country, as well as legal scholars, have recently emphasized: (1) the growing number of cases that are resolved by the plea process; (2) defense counsel's related and important duties in that process; and (3) the "potential problems inherent in a rigid categorical system of distinguishing between direct and collateral consequence" in the sixth amendment context. *Hughes*, 2012 IL 112817, ¶¶ 45-47 (explaining that in reality 94% of state convictions are resolved with a guilty plea

---

[6]We note that the court ultimately decided that under the facts of that case, the defendant had failed to establish that counsel had failed to advise him of the potential involuntary commitment, since the defendant answered "yes" when asked whether he had a conversation with his attorney about the potential for such involuntary commitment. See *Hughes*, 2012 IL 112817, ¶ 62.

so that " 'plea bargains have become so central to the administration of the criminal justice system that defense counsel have responsibilities in the plea bargain process *** that must be met to render the adequate assistance of counsel that the Sixth Amendment requires in the criminal process at critical stages' " (quoting *Missouri v. Frye*, 566 U.S. ___, ___, 132 S. Ct. 1399, 1407 (2012))).

¶ 36    Our supreme court next examined *Padilla. Hughes*, 2012 IL 112817, ¶ 49. The court held that because of the "unique nature of deportation," *Padilla* did not have to explicitly decide whether the distinction between collateral and direct consequences remains appropriate in the context of constitutionally effective representation under *Strickland. Hughes*, 2012 IL 112817, ¶ 49. Rather, according to our supreme court, *Padilla* held that "even though deportation is a civil consequence of a guilty plea, it should not be categorically eliminated from defense counsel's duties because it is a 'particularly severe "penalty," ' 'intimately related to the criminal process,' and 'nearly an automatic result' due to recent changes in immigration law, which have 'enmeshed' the conviction with the penalty of deportation." *Hughes*, 2012 IL 112817, ¶ 49 (quoting *Padilla*, 559 U.S. at 365). Adopting the rationale of *Padilla*, our supreme court in *Hughes* held that "where the [allegedly collateral] consequence [of a sentence] is severe, certain, and sufficiently enmeshed in the criminal process the sixth amendment right to counsel may give rise to a basis for withdrawing [a guilty] plea." *Hughes*, 2012 IL 112817, ¶ 59.

¶ 37    The court further held that under the particular circumstances of that case, the potential for involuntary commitment under the SVPCA constituted such consequences thereby obligating defense counsel at a minimum "to advise a defendant who pleads guilty to a triggering offense subject to the provision of the [SVPCA] that he will be evaluated for and may risk involuntary commitment after completing his prison term." *Hughes*, 2012 IL 112817, ¶ 60. According to our supreme court, failure to advise of such consequences constitutes deficient performance. *Hughes*, 2012 IL 112817, ¶ 60.

¶ 38    Applying the principles articulated in *Hughes* and *Presley* to the cause at bar, we find that registration under the SORA (730 ILCS 150/7 (West 2000)) is a certain and mandatory consequence of any guilty plea to a sex offense so enmeshed in the criminal process that failure to advise about it constitutes deficient performance by counsel. Mandatory registration under the SORA is arguably as severe as involuntary commitment or deportation, since it has stigmatizing and far-reaching consequences into every aspect of the registrant's life. See, *e.g.*, 730 ILCS 150/3 (West 2000) (requiring sex offenders to: (1) register with the Illinois State Police within a specified period of time, providing the police with a current photograph, address and place of employment; (2) report every change of address and employment; and (3) notify law enforcement if leaving the jurisdiction for three or more days and provide the itinerary for travel); see also 730 ILCS 152/115, 120 (West 2006) (requiring the State Police to maintain a publicly accessible database of sex offender information, including the sex offender's address and photograph); 720 ILCS 5/11-9.3(b), 11-9.4(b-5) (West 2006) (prohibiting sex offenders from loitering within 500 feet of a school, residing within 500 feet of a playground "or a facility providing programs or services exclusively directed toward persons under 18 years of age," or loitering within 500 feet of a park when children are present); 720 ILCS 5/11-9.3(a) (West 2006) (prohibiting sex offenders from being present at a school or "in any conveyance owned, leased, or contracted by a school to

transport students to or from school *** when persons under the age of 18 are present *** in the conveyance"); see also 625 ILCS 5/6-106.1(a) (West 2006) (prohibiting sex offenders from qualifying for a school-bus driver permit); 720 ILCS 5/11-9.4(c) (West 2006) (making it unlawful for a child sex offender to be employed by any "facility providing programs or services exclusively directed towards persons under the age of 18"); Pub. Act 96-118 (eff. Aug. 4, 2009) (prohibiting child sex offenders from knowingly operating a vehicle designed for the retail sale of food or beverages, emergency vehicles, or rescue vehicles). What is more, because a violation of the SORA is a strict liability offense punishable by jail time, lifetime registration places a severe constraint on a defendant's liberty. See 730 ILCS 150/10(a) (West 2010) ("Any person who is required to register under this Article who violates any of the provisions of this Article and any person who is required to register under this Article who seeks to change his or her name under Article 21 of the Code of Civil Procedure is guilty of a Class 3 felony. Any person who is convicted for a violation of this Act for a second or subsequent time is guilty of a Class 2 felony. *** Any person convicted of a violation of any provision of this Article shall, in addition to any other penalty required by law, be required to serve a minimum period of 7 days confinement in the local county jail. *** Any sex offender, as defined in Section 2 of this Act, or sexual predator who violates any provision of this Article may be arrested and tried in any Illinois county where the sex offender can be located."). For all of these reasons, we hold that defense counsel has a minimal duty to advise a defendant who pleads guilty to a sex offense of the SORA registration requirement and the length of that mandatory registration, and that failure to do so constitutes ineffective assistance of counsel. *Hughes*, 2012 IL 112817, ¶ 60; *Presley*, 2012 IL App (2d) 10017, ¶¶ 31-34.

¶ 39    In the present case, as the State itself concedes, far from failing to advise the defendant of his lifetime registration duty, defense counsel repeatedly told the defendant that his registration requirement would expire after 10 years. Accordingly, we find that the defendant has sufficiently met his burden in establishing the first prong of *Strickland*. *Presley*, 2012 IL App (2d) 100617, ¶ 29 (discussing counsel's affirmative misadvice regarding registration under the SORA); *People v. Young*, 355 Ill. App. 3d 317, 323 (2005) (discussing counsel's affirmative misadvice regarding collateral consequences); see also *Hughes*, 2012 IL 112817, ¶ 60 (holding that defense counsel has a duty to advise a defendant who pleads guilty regarding collateral consequences of involuntary commitment as a sexually violent person, and that failure to do so may constitute ineffective assistance of counsel); accord *People v. Guzman*, 2014 IL App (3d) 090464 (holding that trial counsel's failure to advise his client of the "collateral risk" of deportation associated with his guilty plea was sufficient to establish the first prong of *Strickland*).

¶ 40    The State nevertheless asserts that even if the defendant has met the first prong of *Strickland*, he has failed in his burden to establish the second, prejudice, prong. For the reasons that follow, we disagree.

¶ 41    It is undisputed that to establish the prejudice prong of an ineffective assistance of counsel claim in a plea hearing context, a defendant must show that there is a reasonable probability that, absent counsel's errors, he would have pleaded not guilty and insisted on going to trial. *People v. Hall*, 217 Ill. 2d 324, 335 (2005) (citing *People v. Rissley*, 206 Ill. 2d 403, 457 (2003)); *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

- 14 -

¶ 42    The parties, however, contest the manner and extent to which the defendant must show that but for counsel's erroneous advice, he would have insisted on going to trial. The State asserts, and we acknowledge that under our supreme court's decision in *Hall* (and subsequently *Hughes*), "[a] bare allegation that defendant would have pleaded not guilty and insisted on a trial if counsel had not been deficient is not enough to establish prejudice." *Hall*, 217 Ill. 2d at 335. Rather, according to the State, the defendant's claim must be accompanied by either a claim of actual innocence or the articulation of a plausible defense that could have been raised at trial. *Hall*, 217 Ill. 2d at 335; see also *People v. Pugh*, 157 Ill. 2d 1, 15 (1993) (citing *Hill*, 474 U.S. at 59).

¶ 43    The defendant acknowledges the holding in *Hall*, but nevertheless contends that in imposing the aforementioned requirement, the Illinois Supreme Court improperly relied on an overly broad reading of the United States Supreme Court's decision in *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). See *Hall*, 217 Ill. 2d at 335-36. According to the defendant, *Hill*, upon which *Hall* relied, merely held that in order to establish prejudice in the plea context, a defendant had to show that counsel's constitutionally ineffective performance "affected the outcome of the plea process," *i.e.*, that there is "a reasonable probability that, but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59. The defendant contends that in *Hill*, the Court went on to note that, when trial counsel errs by failing to discover exculpatory evidence or by failing to inform the defendant of a possible affirmative defense, the determination of whether such errors prejudiced the defendant by inducing him to plead guilty "will depend in large part" on whether the presentation of the evidence or the assertion of the defense likely would have changed the outcome of a trial. *Hill*, 474 U.S. at 59. However, according to the defendant, *Hill* nowhere held that the same considerations should govern the analysis where the alleged error was counsel's failure to advise the defendant of the potential collateral consequence of his plea. Consequently, the defendant argues that *Hall* should not control this case and that, instead, we should find that, apart from the defendant's assertion in his affidavit that he would have proceeded to trial had he been informed that his SORA registration duty would extend to life, no separate showing of prejudice is necessary.

¶ 44    Very recently, the Third District of this appellate court decided *People v. Guzman*, 2014 IL App (3d) 090464, agreeing with the defendant's interpretation of *Hill* as it applies to the *Strickland* prejudice prong. In that case, the defendant contended, *inter alia*, that his counsel was ineffective for failing to advise him that he risked deportation by pleading guilty. *Guzman*, 2014 IL App (3d) 090464, ¶ 32. In discussing the prejudice prong of *Strickland*, the plurality court in *Guzman* bypassed *Hall* and without citing to it, explained:

> "To establish the second prong, prejudice, defendant must demonstrated that but for his counsel's error, there is a reasonable probability that he would not have pled guilty and would have insisted on going to trial. *Hill*, 474 U.S. at 62; see generally *Strickland*, 466 U.S. at 694. Our review requires a fact specific analysis that considers the weight of the evidence, the consequences of legal options, and any circumstances that may affect a decision to enter a plea. [Citation.] To obtain relief on such an ineffective assistance claim, a defendant must show that 'a decision to reject the plea bargain would have been rational under the circumstances.' [Citation.]" *Guzman*, 2014 IL App (3d) 090464, ¶ 33.

- 15 -

¶ 45    Writing in a special concurrence, Justice Holdridge went further and explicitly found that in a case where the alleged error was counsel's failure to advise the defendant of the potential collateral consequence of his plea, *i.e.*, the possibility of deportation, *Hill* did not hold or imply that in order to establish prejudice under *Strickland* a defendant had to allege either actual innocence or a plausible affirmative defense. *Guzman*, 2014 IL App (3d) 090464, ¶ 52 n.7 (Holdridge, J., specially concurring). As Justice Holdridge explained:

> "Such a holding would make no sense. Unlike the failure to discover exculpatory evidence or to inform the defendant about an affirmative defense, the failure to advise a defendant regarding immigration consequences has nothing to do with the strength of the defendant's case at trial. A defendant alleging the latter type of error is not claiming that he pled guilty because his counsel's deficient representation caused him to believe that his case was weaker than it actually was. Rather, he is claiming that he pled guilty because he was unaware of the immigration consequences of such a plea. Thus, such a defendant is not required to show that he would have succeeded at trial in order to establish prejudice. As the United States Supreme Court recently noted in *Padilla*, the only question relevant to the prejudice inquiry in such cases is whether it would have been rational for the defendant to reject the plea offer and go to trial in an effort to avoid potential deportation. [Citation.]" *Guzman*, 2014 IL App (3d) 090464, ¶ 52 n.7 (Holdridge, J., specially concurring).

According to Justice Holdridge:

> "[T]he United States Supreme Court recognized in *Padilla* [that] '[p]reserving the client's right to remain in the United States may be more important to the client than any potential jail sentence.' (Internal quotation marks omitted.) [Citation.] Accordingly, a defendant who fears deportation more than he fears a longer prison sentence might rationally choose to go to trial even if his defense does not appear very likely to succeed. [Citation.] Such a defendant might be willing to risk a lengthier prison sentence in exchange for even a slight chance of prevailing at trial and thereby avoiding deportation. Such a defendant would be prejudiced by his attorney's failure to advise him of the risk of deportation because: (1) he would not have pled guilty if he had known about the deportation risk; and (2) his counsel's deficient performance deprived him of a chance to avoid deportation by prevailing at trial, even if that chance was slim. In other words, depending on the value that the defendant attaches to remaining in the United States, a decision to reject a plea bargain and risk a lengthier sentence by going to trial might be rational even if the defendant appears unlikely to prevail at trial. [Citation.] Under such circumstances, it would be inappropriate and overly burdensome to require the defendant to assert either a claim of actual innocence or a plausible defense that could have been raised at trial." *Guzman*, 2014 IL App (3d) 090464, ¶ 52 (Holdridge, J., specially concurring).

¶ 46    Although we are persuaded by Justice Holdridge's rationale, and believe that it would equally apply to a defendant faced with the prospect of lifetime registration as a sex offender pursuant to the SORA, we are bound by the dictates of our supreme court. See, *e.g.*, *People v. Martinez*, 2011 IL App (2d) 100498, ¶ 45 ("we must follow the decisions of our supreme court over those of the appellate court"); *Nelson v. Aurora Equipment Co.*, 391 Ill. App. 3d

1036, 1038 (2009) ("It is well settled that the appellate court must follow the law as declared by our supreme court."); *Rockford Financial Systems, Inc. v. Borgetti*, 403 Ill. App. 3d 321, 331 (2010) (same); *People v. Fountain*, 2012 IL App (3d) 090558, ¶ 23 ("As an intermediate appellate court, we are bound to honor our supreme court's conclusion on [an] issue unless and until that conclusion is revisited by our supreme court or overruled by the United States Supreme Court.").

¶ 47    Nevertheless, for the reasons that follow, we hold even under the State's interpretation of the *Strickland* prejudice prong (see *Hall*, 217 Ill. 2d at 335-36; *Hughes*, 2012 IL 112817, ¶ 64), the defendant has succeeded in establishing that but for counsel's errors he would have proceeded to trial. Contrary to the State's assertion, the defendant, here, did not make "a bare allegation" that had he been aware of the lifetime SORA registration duty he would have opted to go to trial. Instead, in his section 2-1401 petition (735 ILCS 5/2-1401 (West 2000)), the defendant asserted that at trial he would have raised the affirmative defense that at the time the crime was committed he did not know that the victim was under 18 years of age. Since child pornography is a specific intent crime (see 720 ILCS 5/11-20.1(a)(1) (West 2000)), the defendant asserted the State could not have proven him guilty beyond a reasonable doubt. After reviewing the limited record that is before us, we find nothing therein which would contradict the defendant's well-pleaded affirmative defense. What is more, the defendant's filing of the motion to clarify his sentence supports the veracity of his allegation that the 10-year registration period was integral to his decision to plead guilty and that had he known the registration would be for life he would have proceed to trial. Under these circumstances, we hold that the defendant has succeeded in establishing the second prong of *Strickland*. *Hall*, 217 Ill. 2d at 336.

¶ 48    Since counsel was ineffective in advising the defendant of the registration consequences of his guilty plea, we find that the plea was involuntarily entered and must now be vacated. *Guzman*, 2014 IL App (3d) 090464, ¶ 30 (for a defendant's decision to accept or reject a guilty plea to be "knowing and voluntary, a criminal defense attorney is required to fully inform the defendant of the facts and law related to the State's offer and must candidly advise the defendant concerning all aspects of the case"); *Presley*, 2012 IL App (2d) 100617, ¶ 27; see also *Correa*, 108 Ill. 2d at 549 ("It is *** apparent that the resolution of the question of whether the defendant's pleas, made in reliance on counsel's advice, were voluntary and intelligent and knowingly made depends on whether the defendant had ineffective assistance of counsel. If the defendant's pleas were made in reasonable reliance upon the advice or representation of his attorney, which advice or representation demonstrated incompetence, then it can be said that the defendant's pleas were not voluntary ***."). We therefore vacate the defendant's plea and sentence and remand the case to the trial court for further proceedings.

¶ 49                                    III. CONCLUSION

¶ 50    For all of the reasons stated above, we vacate the defendant's plea, conviction and sentence and remand to the circuit court for further proceedings before a different trial judge. In doing so, however, we remind the parties that they were unable to obtain the record from

the underlying proceedings for purposes of this appeal, and that for this same reason, retrial may prove difficult.

¶ 51          Judgment vacated; reversed and remanded with instructions.