FIFTH DIVISION

No. 1-06-3487

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County |
| | ) | |
| v. | ) | |
| | ) | |
| ROBIN GECHT, | ) | |
| | ) | Honorable |
| Defendant-Appellant. | ) | Eddie A. Stephens, |
| | ) | Judge Presiding. |

JUSTICE O'MARA FROSSARD delivered the opinion of the court:

Following a jury trial, defendant was convicted of attempted murder, aggravated kidnapping, deviate sexual assault, and rape. He was sentenced to concurrent terms of imprisonment for the crimes of aggravated kidnapping (30 years), deviate sexual assault (60 years) and rape (60 years), and to a consecutive term for the crime of attempted murder (60 years), for a total of 120 years in the Illinois state penitentiary. On direct appeal we noted that the evidence of defendant's guilt was "overwhelming" and affirmed his convictions and sentences. *People v. Gecht*, No. 1-84-0319 (1989) (unpublished order under Supreme Court Rule 23).

Defendant filed a post-conviction petition in 1991 asking for DNA testing, which was denied in 1997. Defendant appealed. We affirmed the circuit court's denial. *People v. Gecht*, No. 1-97-2006 (1999) (unpublished order under Supreme Court Rule 23). We noted the victim

1-06-3487

was a prostitute engaged in her trade at the time of the attack and the victim testified that her attacker did not ejaculate. Accordingly, we concluded that even if defendant's DNA did not match any DNA from the victim's rape kit, that fact would be of no consequence. We concluded DNA testing would have "no bearing on defendant's guilt or innocence." *Gecht*, slip op. at 1-2.

On August 13, 2002, defendant filed the successive *pro se* post-conviction petition and motion for DNA testing pursuant to section 116-3 of the Code of Criminal Procedure of 1963. 725 ILCS 5/116-3 (West 2002). That petition and motion were denied. This appeal follows.

BACKGROUND

Around 1 or 2 a.m. on October 5,1982, B.W., a 19-year-old African-American prostitute, asked defendant if he wanted a date and entered defendant's red Dodge van. Defendant pointed a gun and butcher knife at the victim and ordered her to disrobe, which she did. Defendant handcuffed her ankles and wrists, tied a cord around her breasts, and forced her to commit a deviate sexual act by inserting his penis in her mouth. He did not ejaculate. Defendant forced the victim to drink soda and take some pills. He put his penis into her vagina. B.W. testified defendant did not ejaculate at any point. Eventually, B.W. lost consciousness. A few hours later the victim was discovered lying naked in an alley. Her left breast was completely removed and her right breast was severely cut. She was bleeding and in shock.

Expert testimony at trial demonstrated that the victim's disfigurement had been caused by a crude cutting with a knife. The victim described her assailant and the van to police, who arrested defendant. While in the hospital, B.W. positively identified defendant in a photographic show-up and a police lineup.

2

1-06-3487

H.C., also a young African-American prostitute, testified to a similar assault on June 12, 1982. While working as a prostitute H.C. was picked up by defendant in his red van. After entering the van defendant told her to remove her clothing, handcuffed her wrists and ankles, and forced her to commit a deviate sexual act by forcing his penis in her mouth. He told her if she moved he would cut her with the knife he had in his hand. Defendant ordered H.C. to tightly wrap pantyhose around her breasts and ordered her to stab herself in the left breast with a knife while he held a gun. He cut the hole larger and committed a second act of deviate sexual assault, by placing his penis in the hole in H.C.'s breast. Defendant then told her to get out of the van, threw her clothes out of the van and drove away. H.C. identified defendant in a police lineup. The testimony of H.C. was admitted for the purpose of showing *modus operandi*.

Defendant also made incriminating statements to the police following waiver of his *Miranda* rights. He told the police that he had not killed anyone and said that he had "only cut a black girl" and that he knew she was still alive because she identified him in a hospital lineup. During further interrogation, after waiving his *Miranda* rights, defendant admitted to attacking H.C. These statements regarding B.W. and H.C. were admitted against defendant at trial.

Both defendant and two members of his family testified that defendant was home with family members at the times of the attacks. However, the alibi testimony of defendant's wife at trial was impeached. In a sworn affidavit filed by defendant's wife in her divorce case, she indicated that she and defendant had been living separate and apart on the night of the attack upon B.W. Defendant was convicted and sentenced as previously noted. Those convictions and sentences were affirmed on direct appeal. *People v. Gecht*, No. 1-84-0319 (1989) (unpublished

3

1-06-3487

order under Supreme Court Rule 23). Defendant's first post-conviction petition seeking DNA testing was denied. We affirmed the circuit court's denial. *People v. Gecht*, No. 1-97-2006 (1999) (unpublised order under Supreme Court Rule 23). On August 13, 2002, defendant filed the successive *pro se* post-conviction petition and motion for DNA testing pursuant to section 116-3 of the Code of Criminal Procedure of 1963 (725 ILCS 5/116-3 (West 2002)). That petition and motion were denied. This appeal follows.

ANALYSIS

Defendant contends the trial court erred in dismissing his motion for DNA testing. We note that the ruling denying DNA testing pursuant to section 116-3 is reviewed *de novo*. *People v. Schutz*, 344 Ill. App. 3d 87, 90 (2003). The 2002 version of section 116-3 (725 ILCS 5/116-3 (West 2002)) provides as follows:

> "(a) A defendant may make a motion before the trial court that entered judgment of conviction in his or her case for the performance of fingerprint or forensic DNA testing on evidence that was secured in relation to the trial which resulted in his or her conviction, but which was not subject to the testing which is now requested because the technology for the testing was not available at the time of trial. Reasonable notice of the motion shall be served upon the State.
>
> (b) The defendant must present a prima facie case that:
>
> > (1) identity was the issue in the trial which resulted

4

in his or her conviction; and

(2) the evidence to be tested has been subject to a chain of custody sufficient to establish that it has not been substituted, tampered with, replaced, or altered in any material aspect.

(c) The trial court shall allow the testing under reasonable conditions designed to protect the State's interests in the integrity of the evidence and the testing process upon a determination that:

(1) the result of the testing has the scientific potential to produce new, noncumulative evidence materially relevant to the defendant's assertion of actual innocence;

(2) the testing requested employs a scientific method generally accepted within the relevant scientific community." 725 ILCS 5/116-3 (West 2002).

Defendant argues that he demonstrated a "*prima facie* case for forensic testing because identity was an issue at trial, and because, as of September 2005, several pieces of evidence from trial remain impounded at the clerk's office." A defendant requesting DNA testing pursuant to section 116-3 is required to demonstrate that the evidence to be tested was not subject to the requested testing at the time of trial because the technology was not available.

5

725 ILCS 5/116-3(a) (West 2002); *People v. Franks*, 323 Ill. App. 3d 660, 662 (2001). Upon satisfying that requirement, the defendant is then required to provide a *prima facie* case for DNA testing by showing that identity was the central issue at trial (725 ILCS 5/116-3(b)(1) (West 2002)), and that the evidence to be tested has been subject to a secure chain of custody (725 ILCS 116-3(b)(2) (West 2002)). *People v. Shum*, 207 Ill. 2d 47, 66 (2003).

After the above requirements are satisfied, defendant is entitled to DNA testing if the result of the testing has the scientific potential to produce new, noncumulative evidence that is materially relevant to the assertion of actual innocence. 725 ILCS 5/116-3(c)(1) (West 2002). DNA evidence that plays a minor role and is a collateral issue is not materially relevant because it does not significantly advance a claim of actual innocence. *People v. Savory*, 197 Ill. 2d 203, 213 (2001).

Defendant established a *prima facie* case that identity was at issue in his trial (725 ILCS 5/116-3(b)(1) (West 2002)) and that the evidence which he seeks to test was subject to a secure chain of custody (725 ILCS 5/116-3(b)(2) (West 2002)). Defendant further demonstrated that the evidence to be tested was not subject to the requested testing at the time of trial because the technology was not available. 725 ILCS 5/116-3(a) (West 2002).

The issue in the instant case is whether the evidence defendant seeks to test is materially relevant to his claim of innocence. "[E]vidence which is 'materially relevant' to a defendant's claim of actual innocence is simply evidence which tends to significantly advance that claim." *Savory*, 197 Ill. 2d at 213. Whether DNA testing will provide materially relevant evidence of actual innocence "requires a consideration of the evidence introduced at trial, as well as an

assessment of the evidence defendant is seeking to test." *Savory*, 197 Ill. 2d at 214.

In defendant's motion he requests testing of the rape kit, knives, carpeting, and clothing secured as evidence in relation to his trial. In support of the testing, he argues that if biological material were found and the resulting DNA profile does not match defendant, that negative result would support defendant's claim that he did not assault the victim, B.W.

In resolving this issue, we consider the evidence introduced at trial and assess the evidence defendant is seeking to test. A review of the record reflects that the convictions were based on overwhelming evidence that did not include biological evidence. Even if the rape kit, carpeting, clothing, and knives did contain biological evidence, DNA testing would not significantly advance any claim of actual innocence. The knives in the van were implicated in several other attacks. The carpeting was also mentioned as being present when other attacks occurred.

Moreover, as noted in our Rule 23 order rejecting the previous DNA request, the victim, B.W. was working as a prostitute when she was attacked. She had intercourse with four other men before encountering defendant. Contact with these other men could explain any cells on the victim's clothing and absence of defendant's DNA. We further note that defendant did not ejaculate when he raped her. At trial both parties agreed that the rape kit contained no semen. " 'Several reasons are offered to explain how a suspect can still be guilty when his or her DNA does not match DNA found on a victim or at a crime scene, including the use of condoms, the existence of multiple assailants, and the failure to ejaculate in sexual assault cases.' " *People v.*

*Henderson*, 343 Ill. App. 3d 1108, 1121 (2003), *quoting* K. Christian, "And The DNA Shall Set You Free: Issues Surrounding Postconviction DNA Evidence and the Pursuit of Innocence"; 62 Ohio St. L.J. 1195, 1221-22 (2001).

Defendant's reliance on *People v. Johnson*, 205 Ill. 2d 381 (2002), and *People v. Henderson*, 343 Ill. App. 3d 1108 (2003), is not persuasive. In *Johnson*, the victim tentatively identified the man who raped her one month after the attack. The Illinois Supreme Court granted the DNA request, noting the identification was tentative, the defendant did not confess, and although a vaginal swab was provided by the victim, it was never tested. *Johnson*, 205 Ill. 2d at 386, 391, 396-97. Unlike *Johnson*, in the instant case, two victims positively identified defendant and his van, defendant admitted to attacking both victims, and the rape kit contained no semen.

In *Henderson*, the defendant and another man were convicted of rape and kidnapping. The defendant made no admissions, his alibi was supported by his wife and son, and the rape kit tested positive for sperm. In that factual context, we held that the result of testing the bloodstain on the pants recovered in the defendant's bedroom had the potential of producing new evidence materially relevant to the defendant's assertion of actual innocence. *Henderson*, 343 Ill. App. 3d at 1119. Unlike *Henderson*, in the instant case, defendant made incriminating admissions, the rape kit contained no semen, and his alibi was significantly undermined.

Moreover, as previously noted, on direct appeal the evidence in the instant case was "overwhelming." *Gecht*, slip op. at 7. We supported that conclusion with the following discussion of the evidence:

"The victim, B.W., positively identified defendant in a show-up, a line-up, and at trial. She had ample opportunity to view her attacker, and her account of the incident was clear, consistent, and without contradiction. It is well established that the testimony of an eyewitness, especially a victim who had ample opportunity to view her assailant and gives an accurate account of the incident, is sufficient to prove a defendant guilty beyond a reasonable doubt. [Citations.] In addition, a second victim who was also a young black prostitute, H.C., testified that she also had been assaulted in a red Dodge van in a strikingly similar manner to that recounted by B.W. This second victim also had ample opportunity to view her assailant, positively identified defendant as her attacker, and gave an account of the incident. We also note that both defendant's wife and a girlfriend testified to the effect that, when they refused defendant's requests to voluntarily submit to the same acts which defendant later forced upon B.W. and H.C., the defendant responded that he could satisfy his desires by using force upon black prostitutes." *Gecht*, slip op. at 7-8.

We find *People v. Savory*, 197 Ill. 2d 203 (2001), instructive. In *Savory*, the defendant, after being found guilty of murder, asked the Illinois Supreme Court to allow DNA testing. *Savory*, 197 Ill. 2d at 208-09. The Illinois Supreme Court denied the request because forensic

evidence played only a minor role in the trial. *Savory*, 197 Ill. 2d at 215-16. The court held that "evidence which is 'materially relevant' to a defendant's claim of actual innocence is simply evidence which tends to significantly advance that claim." *Savory*, 197 Ill. 2d at 213. The court noted that the bloodstains were only a "minor part" of the evidence and recognized that the defendant's guilt was based on his knowledge of the crime scene and his incriminating statements. *Savory*, 197 Ill. 2d at 214-15. The court concluded that "a test result favorable to defendant [on the bloodstained pants] would not significantly advance his claim of actual innocence, but would only exclude one relatively minor item from the evidence of guilt marshaled against him by the State." *Savory*, 197 Ill. 2d at 215.

We are mindful that in deciding whether the evidence at issue in the DNA motion is materially relevant, we must take into consideration the evidence introduced at trial and assess the evidence defendant is seeking to test. In the instant case, biological evidence played no significant role in defendant's trial and the evidence of defendant's guilt is overwhelming. Accordingly, any DNA testing would not significantly advance defendant's claim of actual innocence or produce evidence materially relevant to defendant's assertion of actual innocence. For the reasons previously discussed, we affirm the order of the circuit court denying defendant's post-conviction petition and section 116-3 motion for DNA testing.

Affirmed.

FITZGERALD SMITH, P.J., and TOOMIN, J., concur.

REPORTER OF DECISIONS - ILLINOIS APPELLATE COURT

THE PEOPLE OF THE STATE OF ILLINOIS,

Plaintiff-Appellee

v.

ROBIN GECHT,

Defendant-Appellant

No. 1-06-3487

Appellate Court of Illinois
First District, FIFTH DIVISION

November 26, 2008

Justice Margaret O'Mara Frossard authored the opinion of the court:

Presiding Justice Fitzgerald Smith and Justice Toomin concur.

Appeal from the Circuit Court of Cook County.
The Hon. Eddie A. Stephens, Judge Presiding.

**COUNSEL FOR APPELLANT**
Patricia Unsinn of the Office of the State Appellate Defender, Chicago, IL 60601
OF COUNSEL: Aliza R. Kaliski


**COUNSEL FOR APPELLEE**
Richard A. Devine, Cook County State's Attorney, Chicago, IL 60602
OF COUNSEL: James E. Fitzgerald, Douglas P. Harvath and Anastasia Nowacki Harper

1-06-3487