NOTICE
This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2020 IL App (4th) 190430-U

NO. 4-19-0430

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
September 28, 2020
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Macon County |
| DEMECO D. HILL, | ) | No. 11CF1257 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Jeffrey S. Geisler, |
| | ) | Judge Presiding. |

_____

PRESIDING JUSTICE STEIGMANN delivered the judgment of the court.
Justices Cavanagh and Harris concurred in the judgment.

**ORDER**

¶ 1    *Held:*    The appellate court reversed the trial court's dismissal of defendant's petition for relief from judgment.

¶ 2    In January 2014, defendant, Demeco D. Hill, was convicted of being an armed habitual criminal (720 ILCS 5/24-1.7(a) (West 2010)) and was later sentenced to 25 years in prison. This court affirmed defendant's conviction on direct appeal. *People v. Hill*, 2017 IL App (4th) 140888-U.

¶ 3    In April 2016, defendant filed a petition for relief from judgment pursuant to section 2-1401 of the Code of Civil Procedure. 735 ILCS 5/2-1401 (West 2014). The trial court dismissed the petition as meritless. On appeal, we modified the dismissal to indicate that it was without prejudice due to defendant's failure to serve the State. *People v. Hill*, No. 4-16-0500 (2018) (unpublished summary order under Illinois Supreme Court Rule 23(c)).

¶ 4    In December 2018, defendant refiled his petition, in which he argued he was entitled to a new trial based on (1) the State's issuing a revised DNA report and (2) defendant's claiming a key witness told him she lied at trial. The State filed an answer, motion to dismiss, and a motion for summary judgment, asserting, in relevant part, that (1) the petition was fatally defective because defendant failed to attached an affidavit from the recanting witness and (2) defendant's newly discovered DNA evidence would not change the result on retrial. In June 2019, the trial court conducted a hearing on the State's motions, agreed with the State's arguments, and dismissed the petition.

¶ 5    Defendant appeals, arguing the trial court erred by dismissing his petition because (1) it was supported by adequate evidence and (2) defendant was entitled to an evidentiary hearing. We agree, reverse the trial court's judgment, and remand for an evidentiary hearing.

¶ 6                                I. BACKGROUND

¶ 7                          A. The Trial and Direct Appeal

¶ 8    In September 2011, the State charged defendant with three counts of first degree murder (720 ILCS 5/9-1(a)(1), (2) (West 2010)), alleging that on August 29, 2011, defendant used a handgun to shoot Billy Rutherford outside a party at 1317 North Woodford Street in Decatur, Illinois. In August 2012, the State added a charge of being an armed habitual criminal (*id.* § 24-1.7(a)). The trial court granted the State's motion to sever the armed habitual criminal charge from the murder charges, which the State later dismissed.

¶ 9    In January 2014, the trial court conducted defendant's jury trial. The State presented evidence that on August 29, 2011, the residents of 1317 North Woodford Street had a party outside the home. Attendees testified that defendant had been at the party as late as 7:30 p.m. Around 8 p.m., shots were fired in the alley. Police responded and found three bullet

casings in the alley.

¶ 10	Carla Brazier testified that in August of 2011, she had a "physical relationship" with defendant. On August 29, 2011, at around 8 p.m., defendant called Brazier and asked her to pick him up at a Price Rite store in Decatur. When she picked defendant up, he was wearing a gray tank top.

¶ 11	Brazier testified that she drove defendant to Shamia Garry's house, a cousin of defendant. Once there, defendant exited the vehicle, went behind the house, and returned with his shirt balled up in his hands. Brazier then drove defendant to her house. Defendant entered alone with his balled-up shirt, which he did not have when he returned. Brazier then drove defendant to his wife's home on Greenwood Court.

¶ 12	Brazier testified that she returned to her home accompanied by her cousin. They searched for defendant's shirt and found it in a utility closet. Brazier stated that a gun was "wrapped up in" the shirt. Brazier's cousin put the shirt and gun in a plastic Save-A-Lot bag, and the two drove to the Greenwood Court residence. Brazier's cousin hid the bag in some bushes behind the house. The next day Brazier told defendant what she had done with the gun.

¶ 13	Brazier identified (1) a black handgun, (2) a gray tank top, and (3) a plastic Save-A-Lot bag as the same items she handled on August 29, 2011. Brazier admitted she had convictions for retail theft, misuse of a credit card, and contributing to the delinquency of a minor.

¶ 14	On cross-examination, Brazier acknowledged that she gave two interviews with police. Brazier further acknowledged that she told the police in one interview that defendant was not wearing a shirt when she picked him up at Price Rite. Brazier stated she did not remember telling the police that (1) she and defendant did not make any stops between the Price Rite and

the Greenwood Court residence and (2) she did not recognize the gun shown to her during her interview. Defendant later presented testimony from the police officers who conducted her interviews, and those officers confirmed Brazier made the prior inconsistent statements.

¶ 15          Dana Pitchford, a forensic scientist with the Illinois State Police Crime Lab, testified as an expert in DNA analysis. Pitchford stated that she tested DNA swabs of (1) the gun, (2) the magazine in the gun, and (3) the gray tank top. Pitchford testified that defendant could not be excluded as a contributor for any of the samples. For the gun, the statistical probability that a person could not be excluded was 1 in 150,000 African Americans; for the magazine, 1 in 560; for the gray tank top, 1 in 31 quintillion.

¶ 16          Officer Lorne Sturdivant of the Decatur Police Department testified that on August 31, 2011, he initiated a traffic stop, and underneath a seat occupied by Kadeem Bradford, Sturdivant found a plastic bag containing a gray tank top wrapped around a handgun. Sturdivant took the items into evidence.

¶ 17          Shawn Green testified he was the owner of the vehicle Sturdivant pulled over on August 31, 2011. Green was in the front passenger seat, his nephew drove, and Bradford sat in the back. Green stated he was defendant's cousin and Bradford was defendant's nephew. Green's testimony indicated that Bradford had an opportunity to retrieve the handgun from the Greenwood Court residence and stow it in the vehicle shortly before being pulled over.

¶ 18          Detective Bryan Kaylor testified he conducted a recorded interview with defendant at the Decatur Police Department on September 7, 2011. Kaylor told defendant that he had spoken with witnesses, the police had located a gun, and that testing would be done on the gun and evidence found at the scene. Defendant informed Kaylor that he left 1317 North Woodford Street at around 7:30 p.m. and walked to the Price Rite, where he received a phone call from his

cousin, who provided defendant with the location of a gun.

¶ 19 Defendant stated that Brazier picked him up and drove him to Garry's house. Defendant exited the vehicle and went to the back of the house, where he found a loaded gun in a window well. Defendant wrapped the gun in his shirt and told Brazier to drive to her residence where he "told her to go put the gun up." Brazier then dropped defendant off at the Greenwood Court residence.

¶ 20 During closing arguments, the State explained, "We called Carla Brazier. I submit she really puts the whole case together because she knows the most about the defendant's activities that night." The State repeatedly emphasized that other testimony and evidence corroborated Brazier's testimony.

"Then we presented DNA evidence ***. [W]e had to show you that the evidence was handled properly and that it is reliable results from the testing that was done.

In summary *** what we learned is that the firearm was swabbed, that 9mm firearm was swabbed on the trigger, on different portions of the gun. The defendant's DNA is located [o]n it because Dana Pitchford testified that only one in 150,000 African Americans cannot be excluded. That is a high statistic. The defendant is one out of 150,000 people who could have contributed to that DNA sample. ***

Then they tested the shirt. *** The statistic on that is, it is one in 31 quintillion—quintillion African Americans cannot be excluded. So, it is beyond any doubt that is the defendant's shirt that was presented to you as evidence.

And then finally they swabbed the magazine, *** the magazine goes

inside of that gun. The magazine that's normally inside of that gun has his DNA on it. Only one in 560 cannot be excluded from having contributed that sample of DNA. That, too, is a high sample.

The defendant is the major contributor of the DNA in all three of those exhibits that were presented to you. The DNA corroborates Carla Brazier's testimony."

¶ 21 During the State's argument, the State again emphasized that the DNA evidence corroborated Brazier's testimony and defendant's confession. The State further emphasized the importance of the DNA evidence, particularly the 1 in 150,000 odds that an African American could not be excluded as contributing to the DNA found on the gun. The State argued, "That is overwhelming evidence of the defendant's guilt."

¶ 22 The jury found defendant guilty of the offense of being an armed habitual criminal. 720 ILCS 5/24-1.7(a) (West 2010). In March 2014, the trial court sentenced defendant to 25 years in prison. This court affirmed defendant's conviction on direct appeal. *People v. Hill*, 2017 IL App (4th) 140888-U.

¶ 23 B. The Section 2-1401 Petition

¶ 24 In April 2016, defendant filed a petition for relief from judgment pursuant to section 2-1401 of the Code of Civil Procedure. 735 ILCS 5/2-1401 (West 2016). In his petition, defendant argued he was entitled to a new trial based on new DNA evidence and Brazier's allegedly perjured testimony. In May 2016, the trial court entered an order dismissing the petition on the merits.

¶ 25 On appeal, this court (1) agreed with the State that the trial court's dismissal on the merits was improper because the State had not been properly served and (2) modified the

dismissal to be without prejudice. *People v. Hill*, No. 4-16-0500 (2019) (unpublished summary order under Illinois Supreme Court Rule 23(c)).

¶ 26                                    C. The Subsequent Proceedings

¶ 27        In December 2018, defendant *pro se* refiled his petition for relief from judgment; the petition was nearly identical to the one filed in 2016. Defendant argued his conviction was based on (1) DNA evidence that was later determined to be false and (2) testimony that was later reported as perjured. Defendant asserted that the jury should be able to see the amended DNA report and hear a recording of Brazier's admission of perjury. The DNA and Brazier were the only ways the State could link defendant to the gun. Defendant claimed that if the jury heard this evidence, it would not have convicted him.

¶ 28        Defendant alleged that the State relied upon DNA evidence contained in a report issued by Dana Pitchford in May 2012. In September 2015, defendant received a response to a Freedom of Information Act (FOIA) request that included an amended DNA report, which Pitchford issued in May 2015. The first report contained information consistent with Pitchford's testimony at trial.

¶ 29        The amended report, by contrast, stated that "[a] potential mixture of human DNA profiles was identified *** in Exhibit 1A [the gun swab] which has been determined to be potentially incomplete. Therefore, this profile is unsuitable for comparisons to known standards and not eligible for entry into the DNA Index." Regarding the shirt swab, defendant could not be excluded as a contributor to the DNA mixture and "[a]proximately 1 in 1.0 million African American *** unrelated individuals cannot be excluded." The amended report further stated that the "low levels of human DNA identified in Exhibit 2A [the shirt swab] have been determined to be potentially incomplete. Therefore, this profile is unsuitable for comparison to known standards

and not eligible for entry into the DNA Index." The report concluded as follows:

> "This report has been amended to modify the interpretation of Exhibit 1A and modify the statistical calculation for the major male profile identified in Exhibit 2A. In addition, the major male profile identified in Exhibit 2A has been removed from the DNA Index. All remaining analytical findings remain the same."

¶ 30　　　　Both reports began the discussion of the results by noting "DNA from Exhibits 1A and 2A was amplified using the Polymerase Chain Reaction (PCR) and profiled at the loci listed on the attached table."

¶ 31　　　　Defendant also alleged in his petition that Brazier contacted defendant by phone while he was in prison and told him she testified falsely at trial. Defendant attached his own affidavit stating that the conversation took place on August 31, 2015, and Brazier explained she testified falsely "out of fear of and at the direction of the police who questioned her." The affidavit indicated Brazier spoke to him "in detail" about her false statements and reasons therefor. Defendant stated he requested Brazier to send him an affidavit, but she never did. Defendant then detailed his efforts to obtain the recording of the prison call, including the names of whom he spoke to and when the conversations took place. In sum, defendant was turned away at every attempt. Defendant then attempted to subpoena the phone call.

¶ 32　　　　(The record demonstrates that the Illinois Attorney General entered an appearance in the case in March 2016 and filed a motion to quash that subpoena. That motion confirmed that defendant had subpoenaed the call, but the Attorney General listed several reasons why the request was improper. The record does not reflect that the motion was ever heard or ruled on.)

¶ 33　　　　In his petition, defendant argued that the newly discovered DNA evidence and "perjur[ed]" testimony entitled him to a new trial. Defendant contended that the State would not

be able to use Brazier's testimony on retrial because it was "perjury." Without her testimony, the State could no longer tie defendant to the gun because the amended DNA report no longer identified defendant as a contributor. Finally, without those pieces of evidence, defendant's confession, on its own, was not sufficient to convict because of the *corpus delicti* rule.

¶ 34                                    1. *The State's Motion To Dismiss*

¶ 35        On April 26, 2019, the State filed three pleadings: (1) an answer to defendant's petition for relief from judgment, (2) a motion to dismiss defendant's petition for relief from judgment, and (3) a motion for summary judgment. In its answer, the State admitted the DNA report had been amended in 2015 after defendant's trial and that the information from the first report was presented to the jury at trial. The State denied that the initial report was "false" and indicated that the amended report was the product of a "new methodology":

> "The April 9, 2015 *** Amended Results specify that the interpretation of the evidence was modified. Nothing indicates the base data was changed or otherwise falsified. In addition, the April 9, 2015 *** Amended Results still concluded even with the new methodology that the defendant's DNA was on the t-shirt tested. The t-shirt tested was wrapped around the firearm admitted into evidence."

The State further denied that Brazier's testimony was perjured and denied that any evidence would be excluded at retrial. The State asserted that Brazier's testimony and the DNA were not the only evidence linking defendant to the gun, pointing out that defendant "made a taped confession to events substantially similar to the events described in Carla Brazier's testimony."

¶ 36        In its motion to dismiss, the State asserted that defendant's petition should be dismissed because, among other things, the petition was fatally flawed because it was not supported by an affidavit from Brazier. In its motion for summary judgment, the State argued it was

entitled to judgment as a matter of law because defendant's petition did not show that the newly discovered evidence was of such a conclusive character that it would probably change the result on retrial. The State's arguments mirrored the statements contained in its answer to the petition.

¶ 37 In May 2019, defendant filed responses to all three of the State's filings. Of note, defendant argued his affidavit setting forth Brazier's statements and the existence of a recorded call was sufficient under Illinois Supreme Court Rule 191(b) (eff. Jan. 4, 2013) to survive a summary judgment. Defendant also disagreed with the State's characterization of the significance of the amended DNA report. Defendant argued the report was not a mere change in methodology but demonstrated Pitchford's initial testimony was false or misleading. Defendant contended that the evidence was sufficient to show the result would probably be different because the State relied so heavily on Brazier's testimony and the DNA evidence in its closing argument and rebuttal. Defendant also contended that his confession, also relied upon heavily by the State, would be uncorroborated without Brazier's testimony and the DNA evidence.

¶ 38 2. *The Motion To Dismiss Hearing*

¶ 39 In June 2019, the trial court conducted a hearing on the outstanding motions. The court stated, "[I]nstead of piecemealing the motion to dismiss and the motion for summary judgment, Mr. [assistant state's attorney], I'm ready to listen to your argument as to why I should dismiss the petition at this stage." The State argued that the petition was fatally incomplete without an affidavit from Brazier supporting defendant's claim of perjury and "even assuming for purposes of discussion that all these allegations are true, they would not state a cause of relief because they would not have resulted in a different verdict."

¶ 40 In response, defendant began by explaining why he did not have an affidavit from Brazier. Defendant stated his mother contacted him, asserting that Brazier had sent a message to

her on Facebook asking defendant to call Brazier because Brazier had testified falsely at trial. (Defendant noted that he attached an affidavit from his mother to this effect to the petition.) Defendant then called Brazier on the prison phone—which informed the parties that the call was being recorded—and asked about Brazier's claim of giving false testimony. Defendant indicated he was careful not to lead Brazier and Brazier told him she made the statements to the police because she was "scared" because the police told her they were going to charge her with murder. Defendant then stated he "ended up losing contact with Brazier so [he] couldn't get the affidavit." Defendant stated he tried to work on it but he could not do much because he was incarcerated. Instead, defendant focused his efforts on obtaining a copy of the recorded call because it would be more trustworthy and he could not have done anything to manipulate it. Defendant then described his attempt to subpoena the call and the State's opposition to his subpoena.

¶ 41 Regarding the DNA and defendant's confession, defendant argued that the State relied heavily upon the DNA evidence and the fact that it was a "match" at trial and in closing. Defendant said, "[The amended report] states that they couldn't even do a DNA on this gun, and the reason I filed it because this is what my conviction was based upon. This was the corpus that they allegedly said corroborated the confessions, the so called confession."

¶ 42 The State responded that it agreed the confession alone was not enough, but it disagreed "that even without the result on Exhibit 1A [the gun], that there would be no corroborating evidence because we still have the results on 2A [the shirt] and we still have the confession itself." "And ultimately, I would say it's not that these results were false, it's just that under the procedures used at that time, these were the numbers that came up with, and then when they changed procedures, instead of being 1 in 150,000, they decided that's not enough to say one way or the other."

¶ 43    In response, about the confession, defendant stated as follows: "Without the DNA evidence, me saying I possessed anything is not corroborated. I was being questioned about a murder, and I was told by the detective—exactly what was said, he said basically your best bet, I'm not quoting him, your best bet is to say that you had this, but we need a witness. So at that time, it becomes say what he told you to say. He said I'm going to go home. I said what do you want me to say. But I've never identified this as being in my possession. I was never shown what he was asking me to say that I possessed none of this, and without the DNA, the State's case becomes extremely weak. I contend that they wouldn't even be able to get the firearms in evidence again at a new trial."

¶ 44    The trial court stated it was considering "whether or not the [petition] should be dismissed and *** one of the decisions the Court has to make is would it make a difference."

"As I have stated already, I understand what has been alleged as to Carla Brazier, that there is no affidavit in this case, and that is troubling that there is no affidavit. I understand that she stated—or [defendant's] mother stated that Brazier told her that she was not truthful. I understand that [defendant] states that he talked to her on the phone and that she informed him, but I do not have an affidavit confirming, so the Court does have issue with that.

We get to the lab results. I know[, defendant,] in your petition [you] state the initial lab results were false. I don't find the initial results were false. There was a change of procedure and, obviously, the change in procedure has changed the results in this case. The argument has been made that it's not a specific match, but there is evidence that [defendant] cannot be excluded in that matter.

And we still have what has been called a confession in this matter, so there

is additional evidence that is in front of the Court.

* * *

[B]ut as I look at everything that is in front of the Court, I cannot find that, first of all, the amended results from the State Crime Lab would have changed the results and made a difference in this case, so at this stage, I am going to allow the State's motion to dismiss the 1401 petition. [Defendant], I do understand what your position is. *** I think you've made a valid argument. I just don't see, in the Court's opinion, that it's going to make a huge difference, even though there is an amended DNA. There is not the affidavit from Ms. Brazier, but there is the arguments that have been made that statements were made changing her testimony, along with the argument that the confession wouldn't have been made but for these other factors. So I am going to dismiss the petition at this stage."

¶ 45    This appeal followed.

¶ 46                    II. ANALYSIS

¶ 47    Defendant appeals, arguing the trial court erred by dismissing his petition because (1) it was supported by adequate evidence and (2) defendant was entitled to an evidentiary hearing. We agree. Accordingly, we reverse the trial court's judgment and remand for further proceedings.

¶ 48            A. The Standard of Review and Applicable Law

¶ 49    "In considering a section 2-1401 petition, the court must determine whether facts exist that were unknown to the court at the time of trial and would have prevented judgment against the defendant." *People v. Welch*, 392 Ill. App. 3d 948, 952, 912 N.E.2d 756, 760 (2009). "Relief under section 2-1401 requires [a] defendant to set forth specific factual allegations

showing (1) the existence of a meritorious claim, (2) due diligence in presenting the claim to the circuit court, and (3) due diligence in filing the section 2-1401 petition." *People v. Cathey*, 2019 IL App (1st) 153118, ¶ 23, 147 N.E.3d 298. "The petition must be supported by affidavit or other appropriate showing as to matters not of record." *People v. Dodds*, 2014 IL App (1st) 122268, ¶ 18, 7 N.E.3d 83. "Where, as here, a section 2-1401 petition is dismissed with prejudice on the pleadings, the standard of review is *de novo*." *Id.* ¶ 19.

¶ 50        The Illinois Supreme Court "has consistently held that proceedings under section 2-1401 are subject to the usual rules of civil practice. [Citation.] Section 2-1401 petitions are essentially complaints inviting responsive pleadings. [Citation.] The petition is subject to dismissal for want of legal or factual sufficiency. [Citation.] Thus, the petition may be dismissed upon a challenge that, even taking as true its allegations, it does not state a meritorious defense or diligence under section 2-1401 case law." *People v. Vincent*, 226 Ill. 2d 1, 8, 871 N.E.2d 17, 23 (2007).

¶ 51        In this case, the State challenges only that defendant's petition fails to raise a meritorious defense. Defendant's claim is based on newly discovered evidence. When addressing claims of newly discovered evidence, this court has described the trial court's ultimate inquiry as follows:

> "[N]ewly discovered evidence warrants a new trial when (1) it has been discovered since trial; (2) it is of such a character it could not have been discovered prior to trial by the exercise of due diligence; (3) it is material to the issue and not merely cumulative; and (4) it is of such a conclusive character it will probably change the result on retrial." *People v. Davis*, 2012 IL App (4th) 110305, ¶ 26, 966 N.E.2d 570.

¶ 52 Recently, the Illinois Supreme Court in *People v. Robinson*, 2020 IL 123849, ¶ 56, set forth the standard for evaluating claims of actual innocence in the context of a motion for leave to file a successive postconviction petition. The supreme court described the "conclusive-character" element as follows: "As previously noted, the new evidence supporting an actual innocence claim need not be entirely dispositive to be likely to alter the result on retrial. [Citation.] Rather, the conclusive-character element requires only that the petitioner present evidence that places the trial evidence in a different light and undermines the court's confidence in the judgment of guilt." *Id.*; see also *Davis*, 2012 IL App (4th) 110305, ¶¶ 61-64 (applying a standard of whether new DNA evidence presented in a section 2-1401 petition was "sufficiently conclusive to undermine confidence in the outcome of the trial"). "[T]he well-pleaded allegations in the petition and supporting documents will be accepted as true unless it is affirmatively demonstrated by the record that a trier of fact could never accept their veracity." *Robinson*, 2020 IL 123849, ¶ 60.

¶ 53                                B. This Case

¶ 54 Here, the trial court erred by applying the wrong standard and weighing the evidence. Regarding the DNA report, the trial court needed to consider the meaning of Pitchford's amended report. In his petition, defendant alleged that the DNA evidence presented at trial "was later disproven." Defendant contended that the second DNA report demonstrated that the first DNA report, relied on at trial, was not "true and correct" as asserted by the State. Defendant asserted that because the State relied upon an incorrect report to physically link the gun to the crime, the gun and first DNA report could not be admitted at retrial.

¶ 55 The amended DNA report stated as follows:

"This report has been amended to modify the interpretation of Exhibit 1A

[gun swab] and modify the statistical calculation for the major male profile identified in Exhibit 2A [the shirt]. In addition, the major male profile identified in Exhibit 2A has been removed from the DNA Index. All remaining analytical findings remain the same."

¶ 56 It is not clear from the face of the report what is meant by "modify the interpretation" of the gun swab and "modify the statistical calculation" for the shirt. Accepting the allegations in the petition as true, the amended DNA report states that the conclusions and statistical calculations Pitchford testified about at trial were scientifically incorrect, as opposed to merely a change in opinion.

¶ 57 The trial court stated the following regarding the DNA report: "I don't find the initial results were false. There was a change of procedure and, obviously, the change in procedure has changed the results in this case." Nothing in the amended report supports this conclusion. Instead, the first paragraph of both reports indicates the analysis was done by "using the Polymerase Chain Reaction (PCR) ***." The State argued in its motions and before the court that there was a change in procedure, but the State did not attach an affidavit to support its explanation.

¶ 58 Further, the trial court stated, "I think you've made a valid argument. I just don't see, in the Court's opinion, that it's going to make a huge difference ***." It appears that the court thought defendant had stated a claim but disagreed with the ultimate merits of that claim. At the motion to dismiss stage, defendant does not have to prove his claims. Instead, the trial court must accept all of defendant's well-pleaded allegations as true, and it is not permitted to weigh evidence. As the supreme court recently indicated in *Robinson*, accepting defendant's allegations as true means that the jury will be persuaded, not merely that witnesses will testify

- 16 -

consistently with defendant's assertions. See *id.* Here, the trial court was not permitted to place the trial evidence and defendant's new evidence on a scale and then weigh them to determine which was more persuasive. Defendant merely had to state sufficient factual support to demonstrate that he had a potentially meritorious claim. Defendant has done so in this case.

¶ 59　　　　The trial court also erred by concluding that defendant's failure to secure an affidavit from Brazier was fatal to his claim. Section 2-1401 requires that petitions be supported by affidavit or other adequate showing. Defendant's affidavit satisfies such a showing under the circumstances of this case. Defendant set forth the substance of what he believed Brazier's testimony would be and detailed the efforts he made to obtain the recording of their phone call. If a retrial were held in this case and if Brazier were to testify consistently with her original trial testimony, instead of as described in defendant's affidavit, defendant would then be permitted to introduce the recorded call to impeach her and as substantive evidence. See 725 ILCS 5/115-10.1 (West 2018).

¶ 60　　　　If accepted as true, Brazier's recantation could lead to a different result on retrial. During the State's closing argument, the State told the jury that Brazier "really puts the whole case together" and that the DNA evidence corroborated her testimony. Indeed, the State's entire closing argument sought to explain how the evidence—and particularly the DNA evidence—corroborated Brazier's account. Because the record shows Brazier's testimony and the DNA evidence were the most important evidence at trial, defendant's allegations, taken as true, could significantly undermine the State's case.

¶ 61　　　　Further, defendant argues that his confession was the product of his determining that it was in his best interest to claim to have moved the gun so he would avoid being charged with murder. As defendant contended in his brief, defendant merely parroted what the detective

told him Brazier said back to the detective. Prior to the detective's telling him Brazier's story, defendant consistently denied any involvement whatsoever. Even when on the phone with his wife, defendant merely informs her that he told the police that he moved the gun, not that he *in fact* moved the gun. Defendant's explanation is not so incredible that a jury could not believe him; indeed, the explanation is consistent with his strategy at trial and throughout this case.

¶ 62　　　　Based on the above, defendant's section 2-1401 petition stated a claim for relief and the State's motion to dismiss should have been denied. In the interest of judicial economy, we conclude that defendant is entitled to an evidentiary hearing on his petition. At the evidentiary hearing, the court should consider whether the evidence is of such a character as to probably change the result on retrial.

¶ 63　　　　We note that defendant has requested we remand with directions to appoint counsel. We express no opinion on this matter because we conclude the trial court is in the best position to address this issue.

¶ 64　　　　　　　　　　　　III. CONCLUSION

¶ 65　　　　For the reasons stated, we reverse the trial court's judgment and remand with directions that the court deny the State's motion to dismiss, deny the motion for summary judgment, and conduct an evidentiary hearing on defendant's section 2-1401 petition.

¶ 66　　　　Reversed and remanded with directions.